and Cross Appellant versus Delta Airlines Defendant Appellant and Cross Appellant. Arguing for the Appellant, Jenna Milliger. Arguing for the Appellant, Arthur Rosenson. Thank you. Ms. Milliger, you may proceed. Thank you, Justice, and may it please the court. As you just heard, my name is Jenna Milliger. I'm counsel for the Appellant Delta Airlines. This case involves an issue of first impression of whether an employer violates Section 35A of the Income Withholding for Support Act if it withholds less than the maximum amount of income permitted under the Federal Consumer Credit Protection Act for child support. The circuit court answered this question in the affirmative. Delta seeks reversal of the circuit court's grant of summary judgment to the plaintiff on this issue. And Delta disagrees with the circuit court's decision for three reasons. First, the court improperly construed the act, which is a penal statute beyond its terms and against Delta. Second, Delta complied with Section 35A of the act. And third, if Delta violated Section 35A as decided by the circuit court, Delta's violation was not knowing until after it received a letter from plaintiff on November 2nd of 2015. With respect to the first issue of the circuit court's construction of the act, Section 35A imposes a penalty upon employers who, after they're served with an income withholding order, knowingly failed to withhold income from an employee's wages or pay amounts that they withhold to the state within seven business days. It is Delta's position that the penalty provision in the act was never intended to apply to a fact pattern, such as the facts in this case where the employer timely withheld and paid withheld income to the state, but did not withhold the maximum amount of disposable income permitted under federal law. The withholding order that Delta received directed it to withhold up to 65% of its employee's disposable income if he did not make enough money to cover the designated dollar amount of support set forth in the withholding order. The employee did not make enough money to withhold the full dollar amount of support because he was a part-time employee, so Delta consistently withheld and timely paid to the state 50% of the employee's disposable income for child support to the state disbursement unit. Let me ask you a question. Was Delta in a position, if it had to at that time, to withhold 65%? So, based on the withholding limits are determined based on whether the employee is supporting another family and whether that... I understand that, but I'm talking about the software package, if you will, with Delta. Were they in a position to withhold 65%? Justice, I think that they would have been able to if they understood that 65% was the correct amount of withhold they could have. At the time when they received the order, their software was programmed to withhold up to 60%, but as evidenced by their behavior after they received Burns' non-receipt notice, they immediately adjusted the software to increase the withholding limit. So, it was certainly within the realm of capability for them to increase those limits, but they believed that they were acting in compliance with the order. Did that answer your question? Yes, thank you. Yes. So, after, as I just indicated, after Delta received a letter from the plaintiff approximately a year after it had been withholding 50% of the employee's disposable income, they received a letter from the plaintiff stating that they should be garnishing at 65% rather than 50%. In response, Delta looked into the plaintiff's increased withholding to 60% by November 20th of 2015 and 65% by December 18th of 2015. The plaintiff later filed a complaint alleging that it knowingly failed, Delta knowingly failed to comply with Section 35A by withholding 50% rather than 65%, and the circuit court agreed. However, the plain language of 35A indicates that it's intended to address the failure of an employer to withhold income altogether or to pay withheld income to the state. And it's also clear from the legislative history of the Act in case of interpreting the Act that it was intended to prevent missed payments. During the legislative debate over the 2012 amendments to the Act, there was a discussion between two of the representatives about the penalty applying to missed payments. In every case that I have found discussing interpreting the Act in Illinois involves staff patterns where there is missed payments due to no withholding by the employer or no remittance of payments that they withheld to the state. What's the responsibility of the employer if the IWO doesn't indicate that this person doesn't have another family? It's not clear from the order what their responsibility is in that scenario. When Delta was put on notice of the underwithholding by the plaintiff, they had to go back and look into their own records, talk to the payroll specialist. They called the state HFS to find out what the proper withholding amount was. So they, having received that information, corrected their withholding. But it is unclear from the face of the order whether they're in addition to that, there was a series of income withholding orders that were issued for this particular employee just prior to the withholding order in question. And there's inconsistency in those orders as to whether or not the employee was in arrears or not. So there were changes in the orders that were entered in this case. But another thing that is important here is 35A is a penal statute. And because it's a penal statute, it needs to be strictly construed in favor of Delta and should not be extended beyond its terms. And any ambiguity in the act should be resolved in favor of Delta. And that principle of construction is set forth in the case of Schmigdal, which is a third district case that was decided in 2018. And I believe that the circuit court's construction of 35A went beyond its terms by imposing a duty on Delta to withhold the maximum amount of disposable income allowed under the act, the Consumer Credit Protection Act, or face penalties. And the language in the statute of 35A indicates that the penalties were intended to apply to employers who knowingly failed to make timely payments. And it was justified on the basis that it would only apply to an employer who knowingly fails to turn over withheld payments in a timely fashion, not to an employer who is acting in substantial compliance by withholding 50% of disposable income. It's Delta's position that all along they believed they were in full compliance based on the ambiguity in the order. Correct. That's correct. And the order didn't say one way or the other, yes, he is supporting another family, or no, he is not. Correct. Is there any case law that says which, in the absence of any indication, which way the presumption goes? I believe the presumption would go in favor of Delta under the Schmigdal case, but because the statute is penal in nature and the interpretation of the order... No, no, I'm sorry. What I meant was, if the order is silent as to there is or is not another family, do you presume there is another family or do you presume there is not another family? I have not located a case that directly addresses that issue, but my rationale in that would be that you would select the lower percentage withholding because the employer can be penalized for overwithholding income if it's in excess of the CCPA limit. So I would go with the lower presumption. The only case that I found that talked about differences in the withholding percentages was a case that doesn't expressly deal with this issue in the act, but it was involved an employer who the court mentioned that they were withholding 50% rather than the maximum amount of 55% that was allowed under the CCPA, and that was a case called Schoenberg v. Oslund, and it's a third district case that was cited in my brief. And the court just mentioned that the employer was garnishing 50% rather than 55% of the employee's income, which was below the 55% ceiling. The employee was not penalized for overwithholding of income. The other issue is that when, so even if you an employer violates 35A of the act, the violation has to be knowing in order for penalties to be come out that have addressed whether particular violations are knowing. And what's clear from the case law is the penalties are not intended to cover innocent or even negligent violations. Rather, the penalties are intended to apply to employers who disregard a withholding order. And in this case, there is no indication that Delta was disregarding the withholding order. They timely withheld and they paid all amounts over to the state. The circuit court in this case found that Delta's violations were knowing for three reasons. They said the payroll system was configured to deduct a maximum of 65%. That Delta had been withholding at 50% for several months prior to receiving the plaintiff's letter, which created a presumption of noncompliance, and that Delta didn't offer, didn't respond to the plaintiff's notice letter. Now, as to the payroll system configuration, as was indicated earlier on, I don't think that issue is germane to the analysis of whether Delta was knowingly violating the order at issue because they immediately, in response to Burns's note letter, increased, were able to reconfigure the system to increase the withholding amount. Further- Not that, I mean, this might go to knowing, but was it ever testified to or ever brought to the court's attention how many IWOs that the Delta deals with on a daily basis or annually? It was on, it was in the affidavit that was produced by, so Delta's payroll processing is outsourced to a third-party company, it was Xerox at the time, and so Xerox was handling that and they handle thousands of orders. Essentially, orders are assigned to garnishment analysts who program, they're plugging information into the system, and then that's how the garnishment is set up. So, for getting back about the payroll system, I believe that, again, they were able to adjust the system to increase the withholding to the maximum amount, but also I believe that the case law indicates that an employer's obligations are satisfied under the act when they mail, initiate, or deliver payment of a withheld payment, which Delta did in every instance. And as to the presumption of non-compliance, or the presumption of a knowing violation created by several months of withholding at 50%, the presumption in 35A, that specific language, indicates that the presumption applies to the failure of a payer on more than one occasion to pay amounts withheld to the state, and Delta paid all amounts withheld to the state on every occasion. So, I don't believe that the presumption applied here. Also, the first time that Delta became aware that it was under withholding child support was when they received Byrne's letter, and at no time prior to that were they unnoticed that they were under withholding. And there's a 2019 case from the 4th District called Hundley, which was brought up in Delta's motion to reconsider the court's ruling on summary judgment, which talks about when a violation of the act becomes knowing. And in Hundley, the employer had two months of non-compliance, followed by a letter from the obligee indicating that they were non-compliant, and then the employer continued to not withhold income from the employee's pay. And what the court said in Hundley is that the first two months of violations were unknowing. They later became knowing after the employer was put on notice of the failure to withhold through the letter from the obligee. And so, I believe that that fact pattern applies here is analogous to this situation because the plaintiff's letter was the first time that Delta realized that it was under withholding or it could withhold more than what it was withholding. And then as to 45J, so 45J was added to the act with the 2012 amendment. And the plain statutory language of 45J indicates that it applies when an obligee is receiving income withholding payments and subsequently fails to receive one of the scheduled payments from a payor. And the legislative history of 45J indicates intent to apply to missed payments. It was added to the act to give employers the opportunity to make up a missed withholding before being subject to penalties under 35. And there's only four cases that discuss the act subsequent to 2012. And only three of them really talk about 45J. In two of the cases, the obligee never sent a 45J notice, so it was really not an issue. And the one case that really looks at 45J in great detail is Hunley. However, in Schmigdal, which is a 2018 case, the concurrent Justice Holdridge's concurring opinion indicates that 45J, the non-receipt notice, is required in circumstances in which an obligee had previously been receiving payments from a payor but subsequently failed to receive one of the scheduled payments. And here, there was no non-payment. The plaintiff received all scheduled payments from Delta in a timely manner. So our position is that 45J is inapplicable. Okay, thank you. Your time is up. Are there any other questions? I have a question. At some point, and I'm not sure of all the details, but sometime in April of 2016, Delta sent a lump sum that was purported to be the difference between 50 and 60 and the 50 and 65. But you did not send any interest with that. No, and actually... Okay, go ahead. No, I'm sorry. You can... I'm sorry. My point is that it seems pretty clear interest would have been due. Well, I don't know that interest was due because I don't think that... Delta paid all of the amounts that it withheld to the state. So there was no non-payment. There was no missed payment. So I don't believe that 45J applied and that the interest was due. And the amount that Delta did send to the plaintiff was actually more than the amount that she had requested in her letter. So Delta actually went back and they reconciled a greater time period of payments than what was included in the plaintiff's letter and sent that amount to the plaintiff. So I think her amount that she requested was around $1,800 and what Delta sent was around $2,300. Does section 45J doesn't have a knowing requirement, does it? Well, I believe that 45J does not in the language. However, the penalty of under 45J refer back to 35A. And so I think that any penalty imposed under 45 still is subject to the knowing standard. And this goes to what was discussed in Hunley. If an employer is unknowingly violating an order, then receives a non-receipt notice, for whatever reason doesn't act in response to that. The court said it would be crazy to penalize that employer for the prior unknowing violation just because it didn't act in response to the 45J notice. So you still have to show that the underlying violation of the act is knowing in order for penalties to accrue. So how much does Delta owe in penalties, based upon your interpretation of 35 and 45? Based on my interpretation of 35 and 45, they only owe penalties for underwithholding that postdated the November 2nd, 2015 notice from the plaintiff. So I think there's roughly three pay periods in that time period. So it's around, and the last one was in the full amount, so it's about $20,000. That's the penalty that you believe should have been paid? That is the most amount of penalty that I believe should be attributed to Delta. So that's based upon 20 days of fines, is that correct? The fine is $100 a day, or is it $1,000 a day? It's $100 per day for each day that the payment is unpaid, up to a maximum of $10,000 per instance of non-paid support. So there were three pay periods that followed the November 2nd, 2015 notice from plaintiffs, and so each time a pay period had an underwithheld child support payment following that notice would be subject to the $100 per day penalty, up to a maximum of $10,000 until the underwithheld amount is paid. Well, if you said there are three pay periods, why isn't it $30,000? Because the final pay period, they deducted at the 65%. I see. Any other questions? Well, you have a 9% interest penalty and a $100 per day penalty. Statute doesn't say 9% and $100 per day, does it? No, it doesn't, but I would argue if... No, it doesn't. I think that if an employer under... If you read 35 and 45 together, if after receiving a 45-J notice, an employer paid to the employee or paid to the child support that was owed plus 9% interest, I don't think the penalty would kick in for that period. So you would just be looking at what was underwithheld or what was not withheld in the 9%. Okay. Thank you. Thank you. You'll have an opportunity to make 10 minutes worth of rebuttal. Thank you. Mr. Rosen, is that how you pronounce your name? Very close. Rosenson. Rosenson. Okay. You may proceed. Thank you. Thank you, Your Honor. Thank you, panel and Ms. Malafina. Not once in Delta's two briefs and not once in Delta's oral argument has it addressed the fact that on its face, the income withholding order, the one and only order entered on November 20th, that was in effect, has a big black X on the box showing an arrearage disclosure that meant that Lifferth was more than 12 weeks behind on his payments. Delta never submitted an affidavit that said, we didn't see that box or the X wasn't on the copy that was sent to us. It had actual notice. There's no genuine issue of material fact from moment one on day one. And throughout the period the IWO was in effect, Delta knew there was a 12-week arrearage disclosure, which meant from moment one on day one, Delta always knew that 50% was the wrong rate. The up to 65% language cannot be read in a vacuum. The entire order must be read and I won't repeat what we wrote in our brief, but it lays it out in crystal clear English, exactly how to determine the specific percentage. It's 5% more when there's an arrearage disclosure and there's another 10% if they're not supporting another family. Delta at no time has ever submitted anything in the record that anyone at Delta thought that Mr. The IWO was silent as to whether he was supporting another family during that relevant time, wasn't it? That is correct. So whose responsibility is it to determine whether or not he's supporting another family? Well, in the Chen second district case, CHEN, which was cited by both parties, it states that contrary to Audemars assertion, Audemars was the employer in that case. Section 35 placed no burden on Erica, Erica was the mother with the children, to inform it of its noncompliance with the support orders in this case. So the second district in CHEN was at least stating in a general sense, not a specific factual sense, that we do not want the employers turning around and trying to put the burden on the parents regarding the compliance with the order. The burden is exclusively, in all respects, on the employer. Who fills out the IWO order? The form order is a DuPage County form and the blanks in the form I filled out by the custodial parents. So for example, the figure, the case caption, the numerals, but about 98% of it is a blank form, multiple pages. Filled out by, in this case, the mother's paternal. The blanks are all filled out correct by the mother, correct. And all the blanks, I'm sorry. If the form does not tell them that he is not supporting another family, how do they know that? Well, considering, I'm going to use common sense, but they know it because he works for them. He's their employee. You know how many people work for Delta Airlines? Correct. And then, I mean, come on, how would they know this particular individual has never had a child that he's supporting? How would you know that? And is it your burden to establish what it is they're supposed to withdraw? Yes. Two items in this. One is the order cannot be amended. I mean, it's a set order. So maybe the form itself should have an extra line item. Counsel, you cannot hold Delta responsible for the way the order was prepared, the pre-printed portion of it. Ah, but if that's the case, then we don't even have to address the second family because we've gotten the order that is more than 12 weeks in arrears. We don't have to prove two violations by Delta that was knowing. We have to prove that 50% was wrong. We've got that in spades with regard to the arrearage disclosure. So the court makes excellent points. And while I'm more concerned, obviously, from my perspective of protecting the custodial parent because that's the objective, the court makes a valid point. The order on its face doesn't reflect it. But if we're going to use that fine line, then that's the same issue that is the death knell for Delta. Because Delta, again, has never even addressed, given an excuse, as to why on earth they ignored the arrearage disclosure. It never gets raised. I keep asking for it in the briefing, but it never happens. And the answer is there is no explanation. There is no excuse. And so if they continue to not address it and they talk about various other matters, maybe they'll say that it's not known. Counsel. We have case law. Mr. Ozenson. It's your, from what I gather over the last four or five minutes of your response to Justice Jorgensen's statement or question, is that it's a slam dunk that it should have been at 55 instead of at 50%? Almost. It's a slam dunk that 50% was wrong and it had to have been, it was knowingly more than that. You're claiming that because the box was checked, the percentage withheld should have been what? At least 55% based on the box. Now, if it was at least 55% and you take 5% and you correlate that to the 50% that was collected, that is essentially a 10% of what was collected that wasn't collected or pretty close, which means if there is to be a penalty for non-payment, why isn't it the same percentage as what 5% is to 50%? Because the statute does not have a substantial compliance, partial performance pro rata component. In the case of Dunahee, 100% of the payments were paid every month, but they were paid monthly, not weekly. That relates to a tangential issue. If they had been making the payments timely, but only made 80% of the payments that they were your syllogism, but you're mixing apples to oranges. Well, I believe that the court is stating that because there was partial compliance, why shouldn't there be a partial penalty? I'm saying that you're claiming that the whole ball of wax is based upon the fact that they either knew constructively or they should have known that they weren't paying 55%. They knowingly paid 50% when they knew that was the incorrect rate, that they had to pay more. That was the knowing violation. That triggers the statutory penalty as written, which is- As I understand it, there were four permutations, four possibilities of the amount that should have been collected and dispersed. One was 50, one was 55, one was 60, and one was 65? Correct. They were wrong. Now, the question is, were they wrong knowingly or were they wrong unknowingly? Were they negligent or were they malevolent? Were they committing reckless disregard? Was it an intentional tort? What was it? The answer is that you don't have to prove malevolence or wilfulness. You have to prove knowledge. The courts have been very clear about that. They knew from the order. This point has been raised by prior courts where people- I'll refer to two cases in a moment, one of which was the Gula case on which Your Honor sat, and one case was the Vaughn case. In the Gula case, the Mississippi employer thought, we don't owe any money under Mississippi law under this. They were incorrect about it. They weren't malevolent, but they were incorrect about it. In the In re Vaughn case, Blue Cross Blue Shield said, we're only paying the doctor's office, not the doctor. Therefore, we couldn't have had a knowing violation because we've got an explanation for why we didn't follow it. The point is that both of those employers weren't able to use it as an excuse to get out of a knowing violation. We don't need to prove malevolence. We don't need to prove willfulness. We need to prove that they had the order. They knew exactly what it stated. We've got case law that states that, including the Gula decision, that based on the clarity of the notice and the employer's failure to adhere to its terms, they can't rebut the presumption of the knowing failure. They knew what was in the order. I don't have to prove that somebody at Delta stated, let's harm Ms. Burns. That never happened. Just like I don't think in Donahue they said, let's harm that custodial panel. They didn't follow the order and that's what is required. I heard your opposing counsel in her oral argument talk about a number of these orders that appeared on their face to be conflicting. There were no orders that were conflicting during 2014, during the period in question. The order was entered on November 20th, 2014. That was the one and only order that was in effect for the next year, not month, year. They only bring up the other orders to do a little razzle-dazzle to say, but nobody submitted an affidavit that said, we didn't understand this order. We were paying under a different order. Let me tell you why it happened. There's no story here about any clerical error, any oversight. This is not the situation that was dealt with in the other cases, and this was not immediately rectified. Remember. How much time before it was not rectified? Excuse me? When you say it wasn't immediately rectified, how much time between their notice and the time they rectified it? How many pay periods? I'm not sure what you mean by the word notice. If you mean notice of the IWO or if you mean notice of the demand letters. So there are two separate answers. From the demand letter was half a year, and that half a year, November to end of April, was after, in the appendix, page 611, we had an email from the lady stating, send the money, send the mother her money. And so, again, I'm not saying it's malevolence, going back to that term. We don't have to prove malevolence, but what I am saying is that there isn't any reason to feel sorry for Delta. I mean, it's the mother and her kids that are supposed to protected here. Delta didn't run out and say, oh, we made an error. Let's address it. They forced Ms. Burns to sit on her hands, wait for a response. The only reason they acted was because the suit was filed. They don't get credit for paying at the end of April, because in February they filed suit and it was served in the beginning of March. Do you feel sorry for the lawyer wasn't clear on the order that was sent to Delta and maybe didn't act on it quickly enough when he saw or she saw that that money wasn't coming in as it should have been? My position is that the employer, this is not an unsophisticated employer. This employer gets an order. It's supposed to follow the order. It didn't do that. It was told about it. It admitted that it didn't do it, and it still did nothing. So there is a course of conduct here from ignoring the checkbox regarding the arrearage disclosure, from ignoring at least externally the demand letter, and doing nothing until seven weeks after they were served with process in this case. And there is ample case authority where the courts are looking at the conduct of the employer and there was no prompt rectification here. And so our position here is that there was a knowing violation committed as of January of 2015. Every single payment Delta knew was too low, period. For that reason, they are liable. In November, they received the demand letter. They read it. They admitted that it was correct. We're withholding too low. It's 65%. They didn't say, do we know whether he's married? They knew he wasn't married in November, just like they did before him. And so they said, we owe her the money. So my comment is that it has always been knowing. The order said 65% is your position. The order stated that based on the box being checked for the arrearage disclosure, it was 55%. And because they had no basis to believe he was supporting another family, 65%. If they had a basis to believe it, then they could justify that other 10%. But they never had a basis. They never said, oh, we thought he had another family. Counsel... You talked about the 12 weeks being on its face. That if at this pay period, the arrearage is more than 12 weeks, it should be at this percentage. Yes. Two weeks later, is the employer simply to assume that the arrearage has not been paid or risk the liability of overwithholding? There is no risk because while the order is in effect... Well, wait a second. There is a risk because you're withholding more money than you're entitled to withhold. So my question is this 12 weeks that you're relying on, how is the employer to know that 12 week percentage remains intact? Is it the employer's obligation to find out? No. The way that the employer knows is because the order remains in effect. And if the order is amended to reflect new information or a new withholding order is entered, then it's the obligation of the custodial parent to send a copy to the employer. But while that order is in effect, there is no potential liability to the employer because they are complying with a court order. Okay. I have nothing else. I do want to address the decision that was discussed. In the event an employer knowingly, let's assume that there's an issue as to whether there has been a knowing violation. And let's assume for the sake of argument that there is not a knowing violation. And then a letter is sent, a demand letter, that reflects that there's a violation and the employer receives it. That's what happened in Hunley. They had a mistake. They thought that they were remitting all the funds. They got a letter. They found out that they weren't. And then they violated it. When that letter is received and that knowledge is obtained, independent of whether there was a knowing violation prior to receipt of the demand letter, that violation then becomes knowing. Meaning that even if there was no issue on the arrearage disclosure, which obviously there is, or with regard to supporting a second family, which again there is, when that demand letter was received and when Delta said, we now have knowledge. We owe 65%. They didn't have a right to then retain that money for six more months. They knew once over, because they already knew from the income withholding order. They knew also from the demand letter that money had to be paid to Ms. Burns. And they didn't pay it. They don't get to say, oh, because we didn't know it in October and we know it in November, we could just keep that money indefinitely. So whether the knowledge was obtained when the order was entered, November of 2014, which is what we claim, or whether the knowledge was obtained when the letter was sent and they admitted it, which is November 2015, either way, they knowingly failed to remit the funds that were due under that income withholding order. And Huntley never dealt with that issue. It was never raised in that case. And therefore, it's not dispositive on, in the event the court states we're going to ignore the arrearage disclosure, it's in the 11-2014 IWO. I'll conclude by addressing the 45J issue. This is actually the case of first impression for the court to deal with. It was never before now, since the amendment occurred in 2012, has a court in any district been asked to address the issue of what happens when there is both a violation of Section 35A and a violation of 45J. Remember, in Huntley, there wasn't a 35A violation because it was a computer error. In Schmidt-Gall, there was a 35A violation, but the custodial parent never sent out the demand letter, so they never actually addressed the 45J issue. This case had both issues. And we went to the statutory language where it states in Section 45J that if you violate this subsection, not this act, not this section, this subsection, there's going to be a penalty for doing that. And we stated in our brief, this language has to be addressed, and Delta has not addressed it. It states there's a penalty for violating this subsection. Now, it makes sense why. As we explained, the legislature wants employers responding to parents who send these letters. Either explain why you didn't get the money, or state, oh, I made a mistake, here is the money. But do something. Take an action. Your time is up. Are there any other questions? No, I have no other questions, thank you. No. What's your response to Ms. Milliger's statement that 45J relates to nonpayment of anything? As addressed correctly by the circuit court judge, 45J expressly states that it only covers the required payment. And as the trial court found out, and as Ms. Burns argued, Delta did not make the required payment. You don't get a free pass from 45J by making a partial payment. Now, Delta could have written a response letter stating, here is why we think our position is correct. Or, you pointed out that we didn't withhold enough, here is the difference. They could have taken either one of those two options. But because they did not make the required payment, they had to respond. And although the court didn't ask this, looking at the bigger picture, I would also state that the reason why the legislature states that the court has to give a response, excuse me, why the employer has to give a response is that they want the custodial parent to be informed. So even if Delta had been correct, which it wasn't for the reasons we discussed, Delta still should have responded. Assuming there are two interpretations of what the intent of the legislature was when it enacted 45J, one being that it relates to nonpayment of anything versus a payment but was not quote unquote 100% of the amount due annulling, is this an ambiguity? No, because that doesn't exist. The statute states in the second line of subsection J, if an obligee was receiving income withholding payments under the statute, does not receive a payment required under the income withholding notice. That's the operative language. There's no ambiguity. We didn't get the payment that was required. We got a payment. We got a partial payment. But the legislature stated the payment required specifically, in my opinion, to address the point that the court is raising. There's no ambiguity. If you don't make the payment that's required, you don't get partial credit for it. That's the way the statute reads. It doesn't state if any payment is made. We don't go down the slippery slope of what if it's 10%, 40%. Because why would anybody, if there was not insufficient income, ever withhold more than 50% on an income withholding order? I understand your argument correctly. There's a double penalty in every instance where supposedly there's a question about the amount to withhold insofar as the IWO is concerned. And once the recipient raises an objection, then based upon your claim that this constitutes knowledge that apparently is retroactive to day one, that everybody who files a claim under 45J will be entitled to a double penalty. Is that not correct? Absolutely not, your honor. 45J is an independent statute. As long as the employer responds to the claim made of the custodial parent, there's no violation. They just have to take a position. We agree or we disagree. And here's the reason why. There's no double penalty. That 45, section 45J requirement, that's a requirement under 35. It's an independent obligation to respond to that letter. And if the response is we disagree with the custodial parent, that's perfectly fine. They're allowed to give that response. The legislature gave two options. They don't have an option of ignoring it and forcing the custodial parent to sue. They don't have an option to say, we know all the money is owed, but we're just to keep it and let's see what happens. 45J is not a double penalty. There's a penalty for the knowing violation of 35A because they didn't file the income withholding order in the rearage disclosure box. That's separate. How much money is your client entitled to based upon the violation of 45J? Well, we asked in the appellate brief prayer for relief for the case to be remanded to the trial court for that determination because it has never been fully flushed out. And so there are multiple, I have multiple thoughts on that. I can share them with your honor, but I just know that it's never been fully flushed out. Our position would be... I'll ask you the question during your five minutes and maybe you can flush it out then. Fair enough, your honor. Thank you. Ms. Milliger, you have 10 minutes. Thank you, Judge. I want to begin by addressing the double penalty argument that counsel for on a violation of an employer who fails to respond to 45J can essentially eradicate or wipe out an employer's prior unknowing violation of 35A, which would defeat the purpose of the legislature in including the knowing language in 35A. The knowing requirement was specifically added to the act to ensure that the penalty would not apply to employers who are acting in compliance or attempting to comply with the order. It was intended to apply to employers who disregard a court's withholding order, which was not evident in this case. Furthermore, there is a $10,000 penalty cap that is included in 35A. Under counsel for plaintiff's interpretation of 35A and 45J with the double penalties, it renders the $10,000 penalty cap meaningless because it would allow a obligee to double recover on the same violation of the withholding order. Ms. Milliger, when would you recover under 45J? You would recover under 45J if there was the obligee did not receive a payment, the obligee sent a notice to the employer, and the employer did not send the missed payment to the obligee. And then the penalties under 35A would kick in. I still believe, though, that the penalty, when the court looks at a violation of 45J and uses 35A as the basis for calculating that penalty, the knowing requirement is still there. So you would still have to show that that violation that the obligee sent the notice on that they were attempting to rectify was a knowing violation. Because if not, it can get double recovery under both if there was no payment. No, I don't think that you can get double recovery because when you look at 35A, it clearly states that the maximum amount that a may recover for any one instance of noncompliance is $10,000. And if the legislature did not intend that exception, that limit to apply, they would have incorporated it into 45J. 45 was added to attempt to improve communication between the payor and the obligee so that if an obligee doesn't receive a payment, there's nonpayment, and that individual notifies the payor, it gives the payor an opportunity to make up the payment. Are you, do you mean no payment at all? No payment. I mean, correct, I mean no payment, nonpayment, entirely missed payment. Okay. Well, if you look at, if you follow Mr. Rosen's argument, then you could say, well, you know what, I'm going to hold on to another 10% since I'm not going to really get penalized because I'm paying it, but I'm not paying it at the amount that they want. Doesn't that seem like it's a little absurd? Um, well, there's no, there's no incentive to the employer to withhold, hold onto that payment because, for example, with Delta, there's money that's designated from payroll to go to an employee and then when Delta calculates the withholding, they're just calculating a portion of the disposable income from that money. So it's either going to the employee or it's going to the child support recipient. It's, they're not, they're not, there's no benefit from them. Yeah. It's not placed in an interest bearing account. Correct? Correct. Correct, Judge. Um, the other thing that I think is important to address, and this, this goes back to, um, whether, um, there's a substantial compliance exception to the 35A, um, and I know counsel for plaintiff's position is that there's no substantial compliance. It's essentially strict compliance or you're subject to liability. Um, and he, he mentioned a case, the Gullah case, which is a second district case that this court decided. What's interesting in Gullah, and I think supports the fact that, um, substantial compliance is contemplated as compliance with 35A, is in Gullah, the employer was located in Mississippi. Illinois sent a withholding order to the employer in Mississippi. Illinois' withholding order directed the employer to withhold up to 65% of the employee's disposable income. Mississippi law said the maximum is 50. You can't withhold more than 50. And rather than withholding 50, the Mississippi employer didn't withhold anything and just didn't act in response to the order. And while the court didn't expressly say this, I think what's contemplated by that is had the employer attempted to comply with the order by withholding at least what its state said that it should withhold, there would have been compliance and could have potentially avoided the penalties. Um, and so again, getting to the ambiguity in the order and, and whether what amount is appropriate to withhold, I think any of those, the ambiguity should be resolved in favor of Delta since it's a penal statute and it should be subject to a pro payer interpretation. The other thing that, um, is, is ambiguous in the act is what is the amount designated in the income withholding order? So section 20 of the act, section 20C outlines the specific things that need to be in a withholding order when it's sent to the payor. And two things that need to be in there are the dollar amounts that the, the payor is required to withhold, um, for regular support and for arrearages. And so it refers to the amount being the dollar amount, but the dollar amounts that are in the withholding order become meaningless when you get in situations like here where you're calculating disposable and you're, you're calculating withholding based on and you're trying to use the percentages, the maximum percentages that are allowed under the CCPA to calculate withholding. Um, one final point I want to make, and, and unless the, the, you, the justices have any other questions, is that, um, Honley, counsel for plaintiffs indicated that Honley did not involve, uh, violations of 35A and 45J. I disagree with counsel's interpretation of Honley. Honley dealt with both 35A and 45J. And what the court in Honley said is that the employer's violations of the order under 35A did not become knowing until after it received the 45J notice. And the employer continued to not send, they withheld and not send over payment to the state. And so it was that continued non-compliance following the 45J notice what triggered the penalties. And so the penalties were calculated from the date of the notice onward. Um, counsel for plaintiffs mentioned, um, that there were months that were rectified on the issue. That's, that's incorrect. Delta rectified the issue, um, filing a plaintiff's letter by increasing the withholding payment. It took two payrolls. You suggested that, that you did, and the two, um, subsequent pay periods, you did correct it first 60 and then ultimately 65%. But you didn't send the past due monies until six months later. How do you justify that? Correct. And so the Delta's reading of 45J was that that money that they had, since they had withheld and paid income to the state, it was not necessarily a past due support amount that was owed. However, after the lawsuit started an attempt to try to minimize issues and to avoid any sort of issue over that, they paid the money. But at the time that they were in violation of 45J because they had been withholding and paying income in amounts that they thought were appropriate at that time. Well, once you're put on notice that it is the wrong amount and that notice relates back to November, either November 20th or November 30th of 2014, there's two different dates in the multiple briefs. That the acknowledgement is that the error or the wrong percentage goes all the way back to November of 2014. Why would Delta conclude that if it was wrong during that period, that the mom isn't entitled to her child support? I don't, Delta didn't conclude that they were wrong. It was that they could increase the withholding limit to 65. They would have been wrong if they didn't withhold anything because 45J, the interpretation of 45J is- Let me rephrase it then. At what point is Delta on notice that it got it wrong from the first instance? From the plaintiff's letter that it received, from plaintiff's letter that's November 2nd, 2015, that it could increase its withholding. Right. But didn't that letter also indicate that Delta, you've been doing it wrong since last November? That's what the letter indicated. However, Delta didn't reach the conclusion that it had been doing it wrong since last November. It was withholding 50% and thought it was complying with the IWO. Keep going around in a circle. Show me what in the letter would lead Delta to believe that only prospectively it should change its amount and that it hadn't been doing the wrong withholding amount all the way back to the original order. Forget the second family, but at least with respect to the 12 weeks. Sure. Delta contacted HFS, the Child Support Enforcement Unit, after it received her letter to get clarity on what amount it should be withholding. It's important to know, Justice, just to clarify about how confusing these orders can be, that there was actually another amended withholding order that was issued to Delta right before receipt of the plaintiff's November 2nd, 2015 notice letter, that the rearage box was not checked on that order. That was right before the November 2nd, 2015 letter from plaintiff. Delta got clarity on the amount that should be withheld when it contacted HFS, and that was prospectively. Time is up. Are there any other questions? None. No, I'm sorry, Justice McClaren, I have none. Thank you. I have no further questions. Thank you. Thank you. Mr. Rosenson, you have five minutes. Thank you. First, I have to correct myself. I gave an incorrect answer to a question asked by Justice Jorgensen. The income withholding order is not filled out by an attorney or a party. Only the court clerk fills it out. In the typewritten form, 100% of the information comes from the court, not from a party. I apologize for that misstatement. Second, again, Delta did not address for the umpteenth time the fact that it received an income withholding order that reflected the rearage disclosure. At the very last second, counsel stated, well, maybe there was another order that didn't address an arrearage. But there's nothing stated that there was any confusion. They knew that in the order that was in effect during the year in question, there was an X in that box. So, again, there's an owing violation because they had a copy of that order. With regard to the partial performance exception, in footnote three of Judge Clemon's opinion, he addressed the fact that maybe there's a middle ground approach assessing a prorated penalty or releasing the payer for substantial performance. And in footnote three on page five of his opinion, he said, neither of these approaches are supported by the express language of the statute. Further, the latter approach would only encourage delay and full performance. We agree with the sentiment expressed by the circuit judge. With regard to section 45J, Delta claims that the court should impute the knowing requirement from section 35A and disregard this subsection language that's actually in there. If that's accepted, I think that that would be a step backward in legislative interpretation. We still have not had a response from Delta, how does this subsection not refer to a violation of the subsection in which it's written, 45J? And if there was supposed to be a knowing requirement, they would have written those words in there. So, our position is that the statute should be interpreted to require payment from the payer for substantial performance. If that's not the case, there's a consequence. If the subsection wasn't made, the letter was sent, no response was given, that subsection was violated, there's a consequence. The court said to ponder what a relief, if any, would be due in the event there is a, the court finds that section 45J had in fact been 21 claimed violations. They are listed in a table, the date, the amount, the amount withheld. Our position would be, and again, I'm doing this quickly, but I do want to answer the court's question. Our position would be that because 21 issues were raised, Delta needed to respond to each one of them. Now, it could have blanketly responded with, here's all your money, or we don't have to pay you. To these numbers, we have this position, to those numbers, we have that position, and to these other ones, we're doing due diligence. So, our position would be 21 responses should have been given. What would be the incentive for Delta to not withhold the right amount? Is there any incentive for them not to withhold the right amount? There is no incentive, and case after case where employers said, oh, there's going to be a windfall to the plaintiff. Let's not, let's not permit this to occur. The Second District has said that's not relevant. In the Chen decision, the court stated. Right, there's no, there's no windfall. Let me ask you this question. In 45J, when, when I think it's, the Delta put in the legislative history, and because looking at the intent of the legislature regarding 45J, I think it's important, and where the, the sponsor of the bill, I think it was indicated that it was Representative Pritchard, that they don't want to, he said, we don't want to soften the fact that people are owed child support, but what we're trying to do is to allow a company that's doing the withholding know that they have an obligation, that there has been a withholding missed, they can make it up and not have an onerous penalty. I would ask for your support. So, I mean, you're asking in, in your cross-complaint for even more of a penalty than, than initially allowed. Where does the intent of the legislature show that this is permissible or encouraged? I would say a couple of responses. First off, the legislature wanted responses given by the employer. The legislature could have stated this is a prerequisite to a 35A recovery, this is part and parcel of a 35A violation, and it is to be construed as such, and then I would wholeheartedly agree with the court. But the legislator, in clear, unambiguous language. You're giving a lot of credit to the legislature to take a look back at others. Yes, I, perhaps, but, but I, I do know this, I do know that people are careful about what they write. There was a big argument about should it be willingly or knowingly for a violation of 45J, so they're parsing through words, and there's no way that that phrase for a violation of this subsection snuck in there because somebody scribbled it in at the last minute. So my comment is that I don't know how we ignore the express unambiguous language that references 45J. Delta's position has been, we're just not going to address those two words. No matter how many times Ms. Burns brings it up, we're never going to address the phrase this subsection because there isn't an answer. The court has said if we look beyond the language, maybe they shouldn't have written it this way, maybe they should have written it differently, and I don't know, maybe the court is correct. Clearly, I'm, I'm raising a position which I, I think is supported by the express language. I didn't find anything that said you can, if you violate 35A, you might as well, if you're an employer, blow off a 45J notice because there's no consequence. It's all part of the same package. So once you've committed knowing violation, toss the demand letter away, no harm, no foul, because it's just part of a separate subsection. But I don't get that impression from the language, and I understand what the court quoted, but I know what the language states, uh, and uh, if 45J relates to a non-payment, meaning zero payment, then it and 35 would be mutually exclusive, would they not? They'd be distinguishable on their elements of proof? If the phrase non-payment had been written into 45J, yes, but since it hasn't, and instead they wrote the required payment, it's a different analysis. The required payment is open to interpretation, and the interpretation to be the IWO. I don't need an answer to this, I'm just making a rhetorical response. Okay, and now I get to my question, which I said I would raise before, which is based upon your understanding of what you believe is the violation of 45J, how much money do you think your client is is 21 responses that they had to give? They should have given 21 responses, they didn't. The violation lasted for 150 days, there's a cap of 100 days, so it'd be 21 times 100 days times $100. That would be answer one, that would be the simple direct answer. Uh, if the court is going to be offended by that because of the result that would occur, and again, I'm not saying that I that I would say that at the very least we had two of the 21 violations ended up being time-barred because Ms. Burns was waiting for her money, but they wouldn't be time-barred under 45J because a year wouldn't have passed since the letter had been sent, so you could probably find a way to have some of them covered, but my opinion still would be the original one, which is 21 responses should have been given. What was the stated reason for why Judge Kleeman refused to grant relief under 45? He stated this was in the ruling on the, um, it was not the summary judgment ruling, it was the subsequent ruling on the motion related to damages. He said, I see what you're saying about the subsection, but I'm going to deny it, and so I think that we know it was getting messed up where, uh, higher minds can wrangle with, uh, other issues, but literally there's no case that denied 45J relief or granted 45J relief, so when I say it's a case of first impression, for better, for worse, this, this really is, um, uh, I guess the court will have to, uh, grapple with that, but I think the language supports our position independent of what the One question, when we talk about arrearages, um, we talk about at least 12 weeks in arrears, right? Yes, that's what the form order states. It must be more than 12 weeks, and then the box must be checked, which it was. Any other questions? Ann? Thank you. Thank you, uh, we'll take the case under advisement, and hopefully we'll render a rational decision at that time. Mr. Clerk, you may close out the proceedings. Thank you.